JAMES M. O'REILLY, APPELLEE, V. HAZEL M. O'REILLY, APPELLANT.

FILED FEBRUARY 20, 1931. No. 27518.

*Lee & Bremers,* for appellant.

*North & O'Reilly,* contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

GOOD, J.

Plaintiff brought this action for the annulment of his marriage, alleging that it was procured by duress and

fraud. Defendant answered, denying duress and fraud, and by cross-petition prayed for a divorce on the ground of nonsupport and cruelty. The trial court found for plaintiff, and entered a decree annulling the marriage and denying any relief to defendant upon her cross-petition. Defendant has appealed.

Plaintiff and defendant were each residents of Douglas county. The marriage ceremony was performed at Glenwood, Iowa, on the 19th day of December, 1929, in the presence of defendant's parents and the officiating minister, after which the parties to this action and defendant's parents returned together to Omaha. Plaintiff left the home of defendant's parents the same evening and did not return, and on the 3d of January following brought this action.

The evidence shows that for a period of about four years plaintiff and defendant had "kept company" with each other, and for a period of three years prior to the marriage they had, from time to time, sustained illicit sexual relations. At the time of the marriage plaintiff was pregnant. On the evening before the marriage ceremony defendant and her mother called upon the plaintiff and asked him to come to their home for a conference. He assented and went in his own car to the home of defendant's parents, where there was a conversation lasting from 20 to 30 minutes, at which time it was agreed that the plaintiff and defendant should be married, but the time was not definitely fixed. Defendant's father was employed in some capacity where it was necessary for him to have a substitute, should he be away, and they arranged to go to Glenwood as soon as the father could procure a substitute in his place. On the following morning plaintiff was called by telephone and informed that a substitute had been obtained, and was asked if he could go on that day to Glenwood, he responding in the affirmative. He went in his car to the home of defendant's parents, placed his car in their garage, and plaintiff and defendant, with defendant's parents, went together to Glenwood,

where the ceremony was performed. Plaintiff testified that on the evening previous, while at the home of defendant's parents, he was threatened by defendant's mother, that unless he married defendant she would cause him to be sent to the penitentiary. This is denied by defendant, and her father and mother testified that no threats of any kind or character were made. Plaintiff testified that, when confronted with the proposition of entering into the marriage, he remarked that he did not know whether the unborn child was his, and he admitted that the mother said to him that if he was not the father she did not want him to marry her daughter. He responded, in effect, that he was responsible for her condition.

Two points are relied upon for the annulment of the marriage: First, duress; second, fraud.

Pursuant to the provisions of section 20-1925, Comp. St. 1929, this court is required to try equity cases *de novo,* and to reach independent findings of fact and conclusions without reference to the findings made by the trial court.

The burden was upon plaintiff to establish duress by a preponderance of the evidence. The only one testifying to any duress or threats was the plaintiff. The defendant and her father and mother, all present at the time, each testified that no threats of any character were made. It is significant that, after plaintiff left the home of defendant and her parents on the evening before the marriage, he had an opportunity to consult with friends or with an attorney, had he so desired, and that, when he was called by telephone the next morning, without any objection he responded that he was ready and willing to go to Glenwood for the purpose of having the marriage ceremony performed. He further admitted that, after he arrived at defendant's home on the morning of the ceremony, during the drive to Glenwood, while there, and on their return, no angry conversation or threats or anything of an unpleasant nature occurred. Under this state of

the record, we feel constrained to hold that the charge of duress is not sustained.

The fraud relied upon by plaintiff for an annulment of the marriage is that defendant was pregnant by another than himself; that this fact was concealed from him, and that he was led to believe that he was the cause of defendant's pregnancy. The record shows without dispute that for three years previous to the marriage plaintiff and defendant had sustained illicit sexual relations at frequent intervals, and that she was pregnant at the time of the marriage ceremony. The defendant testified that she had never sustained sexual relations with any other person than her husband. The only evidence in the record tending to controvert her testimony is the testimony of one, Mrs. Kelly, who testified that in a conversation with the defendant the latter said to her that she did not really think plaintiff was the father of her unborn child. There is no competent evidence that defendant ever had sexual intercourse with any other person than plaintiff.

Section 42-335, Comp. St. 1929, provides: "No decree of divorce and of the nullity of a marriage shall be made solely on the declarations, confessions, or admissions of the parties, but the court shall, in all cases, require other satisfactory evidence of the facts alleged in the petition for that purpose." Defendant denied that she ever had such conversation with the witness Kelly, but, even had this conversation occurred and had she made such admission, under the provisions of the statute above quoted, such evidence was insufficient to entitle plaintiff to the annulment of the marriage contract.

It follows that the judgment of the district court is not sustained by the evidence. Defendant is awarded the sum of $150 as an attorney's fee, to be taxed as costs.

The judgment is reversed and the action dismissed.

REVERSED AND DISMISSED.