ALYCE PETERSON, APPELLEE, V. CARL RUDOLPH PETERSON, APPELLANT.

46 N. W. 2d 126

Filed February 2, 1951.  No. 32896.

*Swenson, Viren & Turner,* for appellant.

*Charles A. Nye,* and *Schall, Robinson, Hruska & Garvey,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellee instituted this case to secure a limited divorce from appellant on the ground of extreme cruelty. He denied her charge of misconduct and by cross-action sought to secure an absolute divorce from her on the claim that she had by her conduct caused him great

pain and anguish and had made it impossible for them to continue as husband and wife.

The district court found that appellee was entitled to a divorce from bed and board, the custody of the minor son of the parties, the right to reside in the residence owned by them, to have the use of the contents thereof, and that she should have specific allowances for her support and the maintenance of the child and compensation for her attorney. A decree was rendered in harmony with the findings. A motion of appellant for a new trial was denied. The correctness of the findings and decree are challenged by this appeal.

The petition of appellee charges that appellant has been guilty of extreme cruelty towards her by conduct which has caused her mental and physical suffering and anguish and which has made it impossible for them to continue as husband and wife. The cross-petition alleges that the conduct of appellee towards appellant has caused him great pain and anguish and has made it impossible for the parties to live together as husband and wife. The respective pleading of the parties asserts only the conclusion of extreme cruelty. There is no specification of any act or omission violative of marital duty of either towards the other, and no fact as to time, place, or manner of any misconduct. The comment is appropriate that the pleading of each of the parties merits the condemnation by this court of a similar pleading in a divorce case when it said: "Recurring to the petition on which the case was tried in the district court, we are confronted with a violation of the general rule of pleading governing this cause of action, which is: 'Cruelty or extreme cruelty within the meaning of the statute must, of course, be alleged where a divorce is sought on this ground, but an allegation that defendant has been guilty of cruelty or extreme cruelty in the language of the statute generally is not sufficient; the particular facts relied on as constituting the cruelty should be set forth in detail, unless it is otherwise pro-

vided by statute.' 27 C. J. S. 698, sec. 108c." Dier v. Dier, 141 Neb. 685, 4 N. W. 2d 731. See, also, De Vuist v. De Vuist, 228 Mich. 454, 199 N. W. 229; Hancock v. Hancock, 55 Fla. 680, 45 So. 1020, 15 L. R. A. N. S. 670; 17 Am. Jur., Divorce and Separation, § 305, p. 306. The rules of pleading in civil cases are applicable to divorce cases in this state and should be observed. However, no challenge was made to the sufficiency or appropriateness of either of the pleadings or the evidence offered on the trial. Each of the parties invoked the power of the court in an effort to obtain affirmative relief. In this situation the evidence has been examined and will be discussed.

Appellant protests the finding and conclusion of the trial court that the proof made by him did not justify the granting of a decree of absolute divorce to him because of extreme cruelty of appellee toward him. There is no corroboration of the charges of misconduct of appellee made by appellant. There was an attempt to corroborate evidence of appellant only as to one instance of claimed improper conduct of appellee. Appellant said that shortly before this case was commenced in February 1950, appellee used unkind, profane, and impolite language in speaking of and to him. A relative of appellant was a witness for him and testified that he was at the home of appellee about two months before the trial of this case and in a conversation with her she said that Pete, appellant, and she had an argument and that she used language substantially as claimed by appellant but that she was sorry she had done so. Appellee denied she made any part of the statements attributed to her except she admitted she did call her husband a foreigner. It is undisputed that she promptly expressed regret and apologized to him for having done so. If appellee made the admissions as testified by the witness they did not constitute corroboration. The statute prevents them from having that quality or effect. § 42-335, R. S. 1943; Kroger v. Kroger, *ante* p. 265, 44 N. W. 2d 475; O'Reilly

v. O'Reilly, 120 Neb. 720, 234 N. W. 916. In the last case above cited it is said: "* * * even had this conversation occurred and had she made such admission, under the provisions of the statute above quoted, such evidence was insufficient to entitle plaintiff to the annulment of the marriage contract." A decree of divorce may not be granted on the declarations, confessions, or admissions of the parties to the case. § 42-335, R. S. 1943; Kroger v. Kroger, *supra.* The court properly denied the cross-petition of appellant.

The parties to this case were married April 4, 1923, and enjoyed a satisfactory marital relationship until about two years before the commencement of this case. Appellant was attentive and loyal to and efficient in his work as a car repairman and car inspector for a railroad for more than 27 years. He worked long hours seven days a week, and during much of the time at night. Appellee was devoted to her duties and responsibilities as a wife and mother. She made and kept a good home. She had roomers much of the time and did extra work for compensation and she responded fully to community obligations and performed helpful organizational assistance. They were thrifty, frugal, and industrious. They each contributed to their expenses, cost of living, accumulations, and savings. They acquired a location, built a comfortable home thereon, and have resided there since 1929. They took and have continued the title thereof in their joint names. They pooled their earnings and maintained a joint bank account. They had no children but adopted and cared for two orphaned boys, the youngest an infant about 13 years of age. The fact that appellant worked nights and rested during much of the daytime for many of the years had its disadvantages and may account for much of whatever estrangement and dissatisfaction that exists.

The revelations of the testimony of appellee are that appellant's attitude changed about two years ago and he thereafter frequently complained about petty things

that he charged to her, and he did not overlook an opportunity to express himself in this regard; in the spring of 1949 and frequently since he asked her to get a divorce, to leave the home, to take their minor son and go; that he stated to her that he never loved her and was a fool when he married her; that in August he said he would leave home and he did for two days, came back crying, she received him and urged him to stay; in September he suggested division of their property, a final separation, and that she get a divorce; she did not consent and he left home and stayed away for two weeks; that there were periods of considerable duration when he ignored everyone in the home and during meals refrained from any communication with them; when he and appellee were together away from home he would sometimes leave her, walk away, and refrained from accompanying her to their home; and that in January 1950, he was insistent that she get a divorce from him, and she told him repeatedly that she did not want and would not get a divorce, that she was not going to leave the home, and that all she wanted was her boy, her home, and to live in peace. This is sufficient to indicate the view appellee had of her marital relationship, the basis for her belief she was entitled to a limited divorce, and the reason why she did not desire an absolute severance of the matrimonial bonds. Further detail is not required.

A stepbrother of appellee, with whom a very friendly relationship had existed for many years, and who had lived in the home of the parties hereto for about two years before the commencement of this case, testified at the instance of his sister. His attempt to corroborate what she said in her testimony was confined to fragments of conversations between his sister and her husband which he had overheard. He said about Christmas 1949 he heard appellant say something to his sister about signing a paper, that she wouldn't do so, and appellant said, "Well, you will or else." The witness did not know the subject of their conversation. On two occasions he

said that he had heard appellant ask his sister why she did not get a divorce. On two or three other occasions he heard appellant inquire of appellee "Did you go down there today?" He did not know what the inquiry was related to. There was no other attempt to corroborate the testimony of appellee.

Personal or physical violence is not the only form of extreme cruelty. It may consist of acts or omissions of such a character as to destroy the peace of mind or impair the bodily health of the unoffending party, or be such as to destroy the legitimate ends and objects of matrimony. Beals v. Beals, 152 Neb. 364, 41 N. W. 2d 152. Or, such conduct as consistent nagging by husband or wife about conduct which is above reproach may be so unreasonable as to destroy the peace of mind, cause injury to health, ruin the legitimate objects of matrimony, and constitute a ground for divorce as extreme cruelty "by other means" within the statutory provisions, although no personal violence is threatened or inflicted. Sell v. Sell, 148 Neb. 859, 29 N. W. 2d 877.

Corroboration of the showing made in support of the appeal of appellee for relief was indispensable to her success in this case. The most indulgent view of the record is that there was very slight, if any, corroboration of the misconduct attributed to appellant by her. It is impossible to formulate a general rule by which to measure the exact amount or degree of corroboration required in a divorce case, and hence each case must be determined upon its facts and circumstances. Brown v. Brown, 146 Neb. 908, 22 N. W. 2d 148; Green v. Green, 148 Neb. 19, 26 N. W. 2d 299.

The conclusion is that appellee has not sustained the burden imposed upon her by the law; that the decree of limited divorce awarded her is not sustained by sufficient evidence; that the decree should be and is reversed with directions to the district court to dismiss the case and tax the costs, including the allowance of $300.00 as com-

pensation of the attorneys for appellee made by the district court, to appellant.

REVERSED WITH DIRECTIONS.

CHAPPELL, J., participating on briefs.